**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X   Case No.
NANCY STRYPE,

                        Plaintiff,                            **COMPLAINT**

        - against -

                                        **PLAINTIFF DEMANDS**
NUVANCE HEALTH, and                    **A TRIAL BY JURY**
LEAH DIMARCO, *Individually*,

                      Defendants.
-------------------------------------------------------------X

       Plaintiff, Nancy Strype, by and through her attorneys, NISAR LAW GROUP, P.C.,

hereby complains of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1.    Plaintiff complains pursuant to the <u>Americans with Disabilities Act of 1990</u>, 42 U.S.C. §

    12101, *et seq*. ("ADA") and the <u>New York State Human Rights Law</u>, New York

    Executive Law § 296, *et seq.* ("NYSHRL"), and seeks damages to redress the injuries she

    has suffered as a result of being **Denied a Reasonable Accommodation**, **Discriminated**

    **against**, and **Having her Employment Terminated** on the basis of her **Disability**

    **(Generalized Anxiety Disorder)**.

## JURISDICTION AND VENUE

2.    Jurisdiction of this Court is proper under 42 U.S.C. § 12101, *et. seq*., and 28 U.S.C. §§

    1331 and 1343.

3.    The Court has supplemental jurisdiction over Plaintiff's claims brought under state law

    pursuant to 28 U.S.C. § 1367.

4.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as it is a judicial district

    in which a substantial part of the events or omissions giving rise to the claims occurred.

## PROCEDURAL PREREQUISITES

5.  Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC").

6.  Plaintiff received a Notice of Right to Sue from the EEOC on November 18, 2020.

7.  This Action is being commenced within ninety (90) days of receipt of said Notice.

## PARTIES

8.  At all times relevant, Plaintiff Nancy Strype ("Plaintiff") was and is a resident of New York State and Dutchess County.

9.  At all times relevant, Defendant Nuvance Health ("Nuvance") is a domestic not-for-profit corporation, duly existing pursuant to, and by virtue of, the laws of the State of New York, with its principal place of business located at 1351 Route 55, Suite 200, LaGrangeville, New York 12540.

10. At all times relevant, Defendant Nuvance is a not-for-profit health system in New York's Hudson Valley region and western Connecticut and has a network of seven (7) hospitals, including Putnam Hospital.

11. At all times relevant, Defendant Leah DiMarco ("DiMarco") was and is an employee of Defendant Nuvance, holding the position of "Human Resources Business Partner."

12. At all times relevant, Defendant DiMarco was Plaintiff's supervisor and/or had supervisory authority over Plaintiff.

13. At all times relevant, Defendant Nuvance and Defendant DiMarco are together referred to herein as "Defendants."

## MATERIAL FACTS

14. By way of background, in or around 1989, Plaintiff was diagnosed with Generalized

Anxiety Disorder, which has subsequently manifested itself in a number of ways, including but not limited to, as Irritable Bowel Syndrome, Increased Blood Pressure, Acid Reflux, and Panic Attacks.

15. In or around October 2015, Plaintiff began working for Health Quest as a "Social Worker/ Case Manager" at Putnam Hospital, earning approximately $52,000 per year.

16. As a "Social Worker/ Case Manager," Plaintiff was responsible for: (a) conducting psychosocial assessments and developing diagnostically based treatment and discharge plans in consultation with multi-disciplinary teams; (b) establishing and maintaining individual records on assigned patients including accurate and up to date documentation of progress notes and treatment plans; (c) collaborating with outpatient providers; (d) attending and participating in daily rounds and weekly community provider meetings; (e) educating patients' families on the patient's mental health diagnosis; and (f) deescalating disputes between patients and family members.

17. On or about August 19, 2019, Health Quest merged with Western Connecticut Health Network to form Defendant Nuvance, at which point Plaintiff became an employee of Defendant Nuvance working at Putnam Hospital.

18. At all times relevant, Plaintiff was a full-time employee of Defendant Nuvance.

19. Throughout Plaintiff's employment, she was an overall good employee and routinely received compliments for her work performance.

20. In fact, because of her work performance, Plaintiff received several raises in pay, ultimately earning approximately $73,000 per year.

21. Furthermore, until the current COVID-19 pandemic, Plaintiff's Anxiety Disorder never interfered with her ability to perform her job, and as a result, Plaintiff never needed to

request any form of accommodations for her Anxiety Disorder.

22.    Unfortunately, in or around early-April 2020, things changed when COVID-19 spread rapidly throughout the United States.  In fact, the COVID-19 pandemic caused an exacerbation of all symptoms related to her Anxiety Disorder and left Plaintiff acutely symptomatic any time she needed to leave her home.

23.    Accordingly, on April 2, 2020, after telling her supervisor, Laurie Muscari, that she was suffering from panic attacks as a result of COVID-19, Plaintiff sent an email to Defendant DiMarco (and CC'd Ms. Muscari) and wrote:

> Please be advised that I, Nancy Stype [am] requesting an accommodation
> to work from home due to an underlying condition related to Covid-19.

24.    Defendants conditionally granted this request and asked Plaintiff for a doctor's note in support.

25.    As such, on or about April 3, 2020, Plaintiff began performing all her job duties from home without any issues.

26.    As Defendants had requested, on or about April 30, 2020, Plaintiff provided Defendants with a completed "ADA Accommodation Medical Certification" on which Plaintiff's doctor, Dr. Suresh Chandani, MD ("Dr. Chandani"), wrote that Plaintiff suffers from "high anxiety due to possible exposure to COVID-19" and requested that Plaintiff "work from home … until resolution is met with COVID-19 pandemic."

27.    Knowing that Plaintiff had already been adequately performing her job with this accommodation while posing no undue burden to Defendants, Defendants continued to accommodate her disability.

28.    In fact, Plaintiff was able to carry a full caseload, admit and discharge patients in a timely manner, interview patients, and provide support to families, all while working from

home.  Plaintiff performed her job adequately and up to expectations from home

throughout April and May 2020.

29.     However, on June 3, 2020, **without engaging in any interactive process**, Defendant

DiMarco sent Plaintiff an email in which she **summarily attempted to remove**

**Plaintiff's accommodation** and stated, in pertinent part:

> Based on the needs of your department and unknown duration of the
> request, the hospital has determined that it cannot continue with your work
> from home arrangement.  Therefore, you are expected to return to work on
> Monday, June 8th.

Plaintiff responded via email and politely objected to the arbitrary removal of her

accommodation since she was able to fully perform all her job duties from home.

30.     As such, on June 8, 2020, Defendant DiMarco reversed her decision and allowed Plaintiff

to continue working from home. This was communicated to Plaintiff via email.

31.     Unfortunately, this reversal was short-lived as Defendant DiMarco called Plaintiff on the

telephone on or about June 25, 2020 and told her that Defendants were removing her

accommodation on July 9, 2020 because an accommodation for an indefinite amount of

time "is not sustainable for the department."

32.     Defendant DiMarco next told Plaintiff that if she (Plaintiff) were unable to work without

an accommodation, she would need to take a leave of absence until she was able to

perform her job without any accommodation.  This did not make sense to Plaintiff as her

accommodation in no way prevented her from performing all the essential functions of

her position, and further, her accommodation did not pose any undue hardship to

Defendants.  Rather, it appeared to Plaintiff as though Defendants were merely trying to

find arbitrary reasons why Plaintiff couldn't perform her job duties from home.

33.     On or about July 9, 2020, after speaking with Dr. Chandani, Plaintiff reiterated to

Defendant DiMarco that her doctor has recommended that her (Plaintiff's) accommodation for her Generalized Anxiety Disorder remain in place. Plaintiff also informed Defendant DiMarco that she would follow up this conversation with a letter from her doctor.

34. As promised, on or about July 13, 2020, Plaintiff provided Defendant DiMarco with another letter from Dr. Chandani in which Dr. Chandani reiterated:

> Due to a diagnosis of Chronic Anxiety (related to COVID 19), it is my medical opinion that if applicable [Plaintiff] should work from home for the time being.

35. After not hearing back from anyone, Plaintiff emailed Defendant DiMarco on July 15, 2020, and then again on July 16, 2020 to inquire as to Defendants' decision as well as to specifically request clarification as to why continuing to work from home as an accommodation for her Anxiety Disorder was "not sustainable" for Defendants.

36. In the afternoon of July 16, 2020, Defendant DiMarco responded to Plaintiff's emails and without providing any reason as to why Plaintiff's accommodation was not "sustainable" and/or Plaintiff not meeting the "needs of [her] department," Defendant DiMarco simply stated in a conclusory manner:

> Your request to work from home has been granted for over 3 months and the hospital cannot continue to accommodate you working from home, particularly for an indefinite amount of time. Therefore, you are expected to return to work on or by July 27th.

37. Nevertheless, on or about July 21, 2020, Plaintiff sent another email to Defendant DiMarco, seeking her to reconsider her decision. Specifically, Plaintiff wrote:

> I wanted to explain why I am requesting to continue to work from home as an accommodation for my disability. I have had suffered from anxiety my entire adult life. The anxiety can manifest in a variety of different ways. I have Irritable Bowel Syndrome, Increased Blood Pressure, Reflux, and Panic Attacks. The Covid 19 has exacerbated every symptom and has left

me acutely symptomatic.  My anxiety has never interfered with my work until Covid 19.  I have worked from home since April 3, 2020 carrying a full caseload, admitting/discharging patients in a timely manner, interviewing patients and providing support to families.  I have proven the work can be done from home.  The request for me to return to work on July 27, 2020 is clear example of discrimination of my disability.  I am appreciative of the protocols put in place however that does not address my disability.  The thought of returning back to the hospital amidst this Pandemic is beyond stressful.  I become extremely anxious, panic attacks, and now under a doctor's care for stomach issues.  I live with my husband who is a Cancer survivor and the thought that I may transmit the virus to him (who is very high risk) is anxiety provoking.  Not to mention that I am in the risk category given that I am over 60 years old.  All of these factors panic attacks, increased blood pressure, stomach issues (Irritable Bowel, Reflux) make it impossible for me to physically return to the hospital.  Please advise if you would like a more comprehensive note from my Doctor.  I respectfully request you reconsider your position of me returning to the hospital to work by July 27, 2020.  I am requesting to continue to work from home doing the best job I can do.  There have been no reported issues with my job performance since working from home on April 3, 2020.

38.    On or about July 23, 2020, once again neglecting to provide any justification whatsoever, Defendant DiMarco replied to Plaintiff that "[i]t has been determined that we cannot grant that specific accommodation."  Nevertheless, Defendants completely failed to try to work with Plaintiff to determine an alternative accommodation that would enable Plaintiff to continue working in her position.

39.    Even though Plaintiff continued to plead with Defendants to allow her to continue working in her position with an accommodation, Defendants refused to even entertain the idea.

40.    Finally, on or about July 27, 2020, rather than permit Plaintiff to continue working from home as an accommodation for her Anxiety Disorder or engage in the interactive process to determine if a different accommodation was viable, Defendant DiMarco instead emailed Plaintiff a termination letter that stated:

> As stated in the July 16, 2020 letter, you were expected to return to work or initiate a medical leave of absence on or by Monday, July 27th.  The letter explained that if you do not return to work or initiate a leave by this date, the hospital will assume that you have voluntarily resigned from your position effective July 27th.  As of today, you did not return to work nor initiate a medical leave of absence.  Therefore, the hospital considers this a voluntary resignation from your position effective today, July 27, 2020.

It is clear that Plaintiff did not voluntarily resign from her employment.  Rather, her employment was terminated.

41. It is apparent that although Plaintiff was fully able to perform her job with an accommodation, Defendants arbitrarily and unlawfully refused to allow her to do so even though it posed no undue burden to them.  In fact, there is no suggestion (or indication for that matter) that Plaintiff was not performing the essential functions of her job to the satisfaction of Defendants.

42. Defendants were apparently discontent that they had to continue to provide Plaintiff with an accommodation for her disability, and rather than permit her to continue to work with this accommodation, Defendants instead determined that it was easier to simply terminate her employment.

43. Defendants not only refused to continue to provide Plaintiff with a reasonable accommodation for her disability but also never attempted to engage in any interactive process to try to determine the best way to accommodate Plaintiff's disability so that Plaintiff could continue her employment with Defendants.

44. Before terminating her employment, Defendants failed to address Plaintiff's Anxiety Disorder and/or discuss any alternative accommodations that would have enabled Plaintiff to continue working with this disability.

45. Defendants neglected to explain to Plaintiff what essential job function(s) she was unable

to perform with her accommodation or explain with any clarity what undue burden/ hardship it felt Plaintiff's accommodation was posing to the hospital.

46. Plaintiff is distraught that, without providing any valid reason or justification, Defendants refused to provide her with an accommodation for her disability and instead terminated her employment.

47. Plaintiff felt offended, disturbed, and humiliated by the blatantly unlawful and discriminatory termination.

48. But for the fact that Plaintiff was disabled and needed an accommodation for her disability, Defendants would not have terminated her employment.

49. Plaintiff's disability (Generalized Anxiety Disorder) is an impairment that substantially limits one or more of her major life activities within the meaning of Section 12102(1)(A) of the ADA, including but not limited to, sleeping, concentrating, thinking, and regulating her emotions.

50. Plaintiff is a qualified individual who could perform the essential functions of her employment with a reasonable accommodation as defined by Section 12111(8) of the ADA.

51. Defendants' actions and conduct were intentional and intended to harm Plaintiff.

52. As a result of Defendants' actions, Plaintiff feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

53. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and

other non-pecuniary losses.

54.   Defendants' conduct was malicious, willful, outrageous, and conducted with full

knowledge of the law.  As such, Plaintiff demands Punitive Damages as against both

Defendants, jointly and severally.

## AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE AMERICANS WITH DISABILITIES ACT
## (Against Defendant Nuvance Only)

55.   Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were

more fully set forth herein at length.

56.   Plaintiff claims Defendant Nuvance violated the Americans with Disabilities Act of 1990

(Pub. L. 101-336), as amended, as these titles appear in volume 42 of the United States

Code, beginning at section 12101.

57.   Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I,

Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity

shall discriminate against a qualified individual on the basis of disability in regard to job

application procedures, the hiring, advancement, or discharge of employees, employee

compensation, job training, and other terms, conditions, and privileges of employment."

58.   Defendant Nuvance engaged in an unlawful discriminatory practice by discriminating

against Plaintiff because of her disability, failing to provide an accommodation for her

disability, and terminating her employment due to her disability.

59.   As such, Plaintiff has been damaged as set forth herein.

## AS A SECOND CAUSE OF ACTION FOR DISCRIMINATION
## UNDER NEW YORK STATE EXECUTIVE LAW
## (Against All Defendants)

60.   Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

61.   New York State Executive Law § 296 provides that, "1. It shall be an unlawful

discriminatory practice: (a) For an employer or licensing agency, because of an

individual's age, race, creed, color, national origin, sexual orientation, military status,

sex, disability, predisposing genetic characteristics, marital status, or domestic violence

victim status, … to discriminate against such individual in compensation or in terms,

conditions or privileges of employment."

62.   Defendants engaged in an unlawful discriminatory practice by discriminating against

Plaintiff because of her disability, refusing to provide Plaintiff with a reasonable

accommodation, and terminating her employment due to her disability.

63.   As such, Plaintiff has been damaged as set forth herein.

**AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION
UNDER NEW YORK STATE EXECUTIVE LAW
(Against Defendant DiMarco Only)**

64.   Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

65.   New York State Executive Law § 296(6) provides that it shall be an unlawful

discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of

any acts forbidden under this article, or attempt to do so."

66.   Defendant DIMARCO engaged in an unlawful discriminatory practice in violation of

New York State Executive Law § 296(6) by aiding, abetting, inciting, compelling and

coercing the above discriminatory and unlawful conduct.

**JURY DEMAND**

67.   Plaintiff requests a jury trial on all issues to be tried.

11

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A.  Declaring that Defendants engaged in unlawful employment practices prohibited by the ADA and the NYSHRL, in that Defendants discriminated against Plaintiff on the basis of her disability, refused to provide her with an accommodation, and terminated her employment due to her disability;

B.  Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C.  Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D.  Awarding Plaintiff punitive damages;

E.  Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action; and

F.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated:  New York, New York
       January 5, 2021

                                                  **NISAR LAW GROUP, P.C.**

By:   _____
                      Casey Wolnowski, Esq.
                      *Attorneys for Plaintiff*
                      One Grand Central Place
                      60 East 42nd Street, Suite 4600
                      New York, New York 10165
                      Ph: (646) 449-7210
                      Fax: (516) 604-0157
                      Email:cwolnowski@nisarlaw.com